

**U.S. Department of Justice**

*United States Attorney's Office*
*District of Delaware*

*The Nemours Building*
*1007 N. Orange Street, Suite 700*     (302) 573-6277
*P.O. Box 2046*     FAX (302) 573-6220
*Wilmington, Delaware*
*19899-2046*

VIA CM/ECF                    March 6, 2018

The Honorable Leonard P. Stark
Chief United States District Judge, District of Delaware
844 King Street, Room 6124
Wilmington, DE 19801

    Re:   *United States v. Latoya T. Smith*
           <u>Docket No. 1:17CR00015-LPS</u>

Dear Chief Judge Stark:

    Please accept letter in response to the Motions for Downward Departure filed on behalf of Defendant Latoya Smith.[1]  D.I. 61, 62.  Sentencing in this matter is scheduled for March 12, 2018, and the United States Sentencing Guidelines ("U.S.S.G.") recommend a sentence between twenty-seven (27) and thirty-three (33) months in prison.  PSR ¶ 105.

    For the reasons set forth below, the United States submits that a Guidelines sentence in accordance with a lower criminal history score, to be followed by two (2) years of supervised release, is sufficient but not greater than necessary to achieve the goals of punishment set forth in 18 U.S.C. § 3553(a).[2]

    **A.  The Defendant's Criminal History is Over-represented.**

    The United States agrees with the defendant that this Court should grant a downward departure pursuant to U.S.S.G. § 4A1.3(b)(1).  The Court has discretion to vary downward if a defendant's criminal history is "substantially over-represent[ed]" relative to the seriousness of her crimes.  *Id.*; *United States v. Grier*, 585 F.3d 138, 142 (3d Cir. 2009).  Here, the defendant's record is unworthy of criminal history category IV.

    The defendant claims her criminal history category should be II, which would constitute erasing five (5) points from her criminal history score.  Such a drastic reduction is without justification.[3]  She has four (4) convictions in three (3) years.  PSR ¶¶ 37-40, 46-57.  She has a

---

[1] The defendant has yet to file a sentencing memorandum, though the United States anticipates that she will ask this Court to vary downward from the applicable Guidelines range.
[2] As it does in every case, the United States submits a sealed Attachment A along with this letter.
[3] The defendant notes that U.S.S.G. § 4A1.3(b)(1) "is even available to defendants with career offender status" but she omits that such a departure "may not exceed one criminal history category."  D.I. 61 at 4; § 4A1.3(b)(3)(A).

*United States v. Latoya T. Smith*, Docket No. 1:17CR00032-LPS

pattern of disregarding the law, which escalated from retail thefts to corruption of minors to attempted straw purchases—the last while on probation.

The timing of the instant crimes impacts her category, which is exactly what the Guidelines envision for someone on probation. U.S.S.G. § 4A1.1(d). The defendant committed these criminal acts after having been on probation for only one month. Two points elevate her from category III to category IV—those two points alone would qualify her as category II. She is then, in effect, asking this Court to eradicate her entire conviction history and depart two categories downward.[4]

Category IV over-represents the seriousness of the defendant's criminal history, and a one-category departure, to category III, is appropriate here. Anything more would provide a free pass for the defendant's string of recent convictions.

### B. The Defendant Does Not Qualify for a Discretionary Downward Departure Pursuant to U.S.S.G. Section 2K2.1.

The defendant has moved for a downward departure under U.S.S.G. § 2K2.1, Application Note 15, in which "a downward departure *may* be warranted" if a combination of facts apply:

> In a case in which the defendant is convicted under 18 U.S.C. §§ 922(a)(6), 922(d), or 924(a)(1)(A), a downward departure may be warranted if (A) none of the enhancements in subsection (b) apply, (B) the defendant was motivated by an intimate or familial relationship or by threats or fear to commit the offense and was otherwise unlikely to commit such an offense, and (C) the defendant received no monetary compensation from the offense.

The defendant has not accepted responsibility for attempting illegally to purchase firearms for another. PSR ¶ 7, n.1. Yet, she seeks a departure because her crime was "motivated by an intimate . . . relationship . . . ." D.I. 62, p. 1. In more ways than one, the defendant is attempting to have her proverbial cake and eat it, too. For example, she asserted though counsel that:

> there is simply (a) no evidence that Ms. Smith knew [G.B.] was prohibited, (b) that [G.B.] wanted a gun, (c) that [G.B.] expressed a desire to buy a gun to Ms. Smith, or (d) that [G.B.] asked Ms. Smith buy a gun for *him.*

(emphasis in original). Defendant's Letter Brief on Third Circuit 404(b) Law, D.I. 40, at 2. Now, while rejecting the recitation of facts in the PSR—including that she was buying the gun for someone else—defendant argues her crimes were "motivated by" her relationship to G.B., in direct contradiction with her prior and current assertions that the guns were for her.

Further, the defendant admitted evidence during trial—including her purported National Rifle Association ("NRA") membership card—to demonstrate that the guns she attempted to buy were for her. Defense Trial Exhibit 21. Defense counsel also argued during opening and closing statements that the NRA card, along with unsubstantiated visits to a shooting range, demonstrated

---

[4] The defendant cites *United States v. Shoupe*, 35 F.3d 835 (3d Cir. 1994), in support of her position. That case is inapposite for three reasons: *Shoupe* was based on an older version of § 4A1.3, which was "superseded" by the 2003 Guidelines changes; it was a career offender case, unlike here; and most importantly, it is now, post-*United States v. Booker*, 543 U.S. 220 (2005), considered "displaced" by the Third Circuit. *Grier*, 585 F.3d at 142-43.

that the defendant was a gun aficionado and the guns were for her, not anyone else.[5] Throughout the pretrial stages she asserted, through counsel, that G.B.'s status as her boyfriend at the time of the crimes was "an allegation she entirely denie[d]." Defendant's Pretrial Motion to Exclude Evidence, D.I. 35, at 1.

Finally, the defendant omitted a key word—"may"—from her downward departure motion, thus downplaying the Court's discretion. Compare D.I. 62, at 1 with U.S.S.G. § 2K2.1, Application Note 15. Even if this Court agreed with the defendant—which the government respectfully suggests it should not—the Court still need not, and ought not, grant any departure because her continued refusal to accept any responsibility counsels against such a departure. As the defendant wrote, "such a [downward] departure would represent her offense level had she pleaded guilty[.]" D.I. 62, at 3. Such argument proves the government's point. The defendant manifestly did not plead guilty, and she has intentionally avoided agreeing to any of the facts found by a jury in support of her convictions. She should not be treated as though she had. She does not qualify for the requested downward departure, and it should be denied.

### C. The U.S.S.G. Section 3553(a) Factors Support a Guideline Sentence.

The defendant twice tried to straw purchase guns just one month after being placed on probation. Application of the 18 U.S.C. § 3553(a) factors to the defendant and her conduct of conviction offers scant reason to vary from a Guidelines sentence.

First, the defendant's history and characteristics show little respect for the law. *See* 18 U.S.C. § 3553(a)(1). The instant conviction was her fourth in three years. PSR ¶¶ 37-40. During her initial appearance, knowing that two of the four counts involved false statements about the defendant's residence, Chief Magistrate Judge Thynge explained to the defendant that she must reside at the address she provided to U.S. Probation. PSR ¶ 6. In the ensuing months it became clear to U.S. Probation that the defendant was not living there. *Id*. The defendant was "admonished" by her pretrial services officer and only then reported that she moved into her mother's home. Still, on unannounced home visits, the defendant has not been found at that location. *Id.* Moreover, as the United States raised during the December 5, 2017 pretrial conference, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") had been trying for weeks to serve a trial subpoena on the defendant's mother.[6] Through multiple visits to the mother's (and purportedly the defendant's) home, the ATF was told that the mother did not live there and no one knew where she was. Now, as made clear in the PSR, the mother has lived there all along, and the defendant lied to law enforcement. PSR ¶¶ 5-6.

Second, the defendant's conduct was serious, particularly because she tried to purchase firearms just one month after being convicted admonished by a Chester County judge and placed on probation. *See* 18 U.S.C. § 3553(a)(2)(A). Nationally, in the most recent available study, straw purchases were involved in almost one-half (46%) of gun trafficking investigations and are associated with nearly 26,000 illegally trafficked firearms.[7] Other estimates say that forty percent

---

[5] Of course, counsel's arguments were—unlike the NRA card—not evidence.

[6] As stated during the pretrial conference, the United States could have sought a bench warrant and sent the ATF into the home to find the mother. Ultimately, we decided such a drastic step was unnecessary.

[7] Bureau of Alcohol, Tobacco and Firearms, US Dep't of Treasury, Commerce in Firearms in the United States 22 (Feb. 2000), *available at* http://permanent.access.gpo.gov/lps4006/020400report.pdf.

*United States v. Latoya T. Smith*, Docket No. 1:17CR00032-LPS

(40%) of criminals obtain their guns from friends or family.[8]  Locally, Wilmington is plagued by gun violence—and many of the guns used in the city's violence come from straw purchased guns. This district has seen two such cases very recently.  In *United States v. Brilena Hardwick*, a matter pending sentencing, the defendant straw purchased a gun that was subsequently used in the murder of an innocent young mother.  Case No. 17-76-GMS.  Hardwick, with zero criminal history points, faces a Guidelines range of fifteen (15) to twenty-one (21) months.  In *United States v. Darius Shields-Dryden*, the defendant straw purchased several guns for, and used by, Wilmington gang members.  Case No. 16-88-RGA.  Shields-Dryden received 36 months' imprisonment after a two-point enhancement for the guns being used to inflict injury (his original Guidelines range was twenty-four (24) to thirty (30) months).  This defendant's dangerous conduct is the same as those defendants': she lied in order to purchase a gun for someone—perhaps herself—who was prohibited from having one. Fortunately, it did not result in the same tragic ending, but not for lack of trying via going to two gun stores in two days.  This conduct necessitates both specific and general deterrence.  *See* 18 U.S.C. § 3553(a)(2)(B).

The defendant may ask this Court to vary downward after requesting downward departures. The defendant, even after engaging in repeated criminal activity—while on probation—had ample opportunity to avoid being where she now sits.  Defendants who engage in similar conduct should be sentenced similarly in order to avoid unwarranted sentencing disparities.  18 U.S.C. § 3553(a)(6).  This defendant is not entitled to a variance just because the gun shop employees, in this case, did their jobs and prevented more straw purchased guns from hitting the street.

For the reasons set forth above, the United States respectfully requests that the Court reduce the defendant's criminal history category to III—resulting in an applicable Guidelines range of twenty-one (21) to twenty-seven (27) months in prison—and sentence Defendant Latoya Smith to a Guidelines sentence, to be followed by two (2) years of supervised release.

    Respectfully submitted,

    DAVID C. WEISS
    UNITED STATES ATTORNEY

BY:    _/s/ Alexander S. Mackler_____
    Alexander S. Mackler
    Assistant United States Attorney

---

[8] Bureau of Justice Statistics, cited in *Don't Lie for the Other Guy*, *A National Campaign to Prevent the Illegal "Straw Purchase" of Firearms*, available at http://www.dontlie.org/faq.cfm (last accessed on March 2, 2018).