IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 17-15-LPS |
| | ) | |
| LATOYA THERESA SMITH | ) | |

## **LATOYA SMITH'S SENTENCING MEMORANDUM**

**I.    FACTS**

"It is like not being able to breathe."

That is how Latoya Smith describes the last five years of her life.

And it being "like not being able to breathe" is not a metaphor. She has been "hospitalized on three occasions, receiving 15 stitches in her forehead; 20 stitches in her upper-lip; and seven staples in her head." Over the years, she has suffered "'fractures in her eye, with bone floating near her right eye; one molar knocked out; six chipped teeth, vision issues; dizzy spells; headaches; short-term memory issues; darkening of the skin under her eyes; and a prior injury to her jaw." PSR ¶ 73. Yet, as she sat in the Probation Office describing this to the probation officer, even after initially denying being a survivor of domestic violence, she literally felt that her air passage was blocking off. After been beaten this way, the father of her children would act the next day as if nothing happened. It was as if this was normal. It *was* normal. She was beaten so badly in April 2016 that she was ultimately diagnosed has suffering from "a severe multifocal brain injury with objective and valid scores of less than 1% of verbal memory, visual motor speed and reaction time with 1 percentile of the

visual memory with a cognitive efficiency index of .09. This suggests deficits in speed and accuracy." (April 18, 2017 Letter from Dr. Grossinger).

Today, Latoya is thirty years old and the mother of four children, ages 3, 9, 11, and 12. She has known the father of her children since age 15.

Latoya had never been someone who partied (or parties), and used no drugs or abuse alcohol. The relationship started out well but after she got pregnant in high school with their first child, things began to change for the worse. At first, it would be monitoring of her whereabouts and that came with ways to isolate her. It later turned violent and got worse from there. Indeed, she "always believed the physical abuse was her fault, noting that her former boyfriend told her so." PSR ¶ 83.

It is common for women to remain in abusive relationships without reporting the abuse to authorities. Economic, emotional, and other ties, as a practical matter, prevent the woman from separating from the abuser or seeking governmental protection against him. Ms. Smith's relationship with G.B. has all these hallmarks of domestic abuse. She also lacked the financial resources to leave her abusive and troubled family life.

Ms. Smith stands convicted of making two false statements on two Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Forms 4473. This is a non-violent crime and she never possessed or transferred the firearm. The stress and ordeal attendant to a federal indictment and trial has been very overwhelming. She has been on pretrial release and has been compliant.

Simply put, putting Latoya Smith in prison does nothing but simply punish her even more. Given the circumstances of this case, she does not belong in a federal prison, far away from home, her children, and her family, for an extended period.

     A sentence of no more than a year and a day, followed by two years on supervised release, $400 special assessment fee, is a very tough punishment for someone who has never been in jail before for more than eight days, and did not profit from this offense at all and appears to have been taken advantage of by an abusive partner. This is especially so in light of additional incarceration which will follow because this conviction violates her county probation.

**II.**     **APPLICATION OF § 3553(a) FACTORS**

     **A.**     **Nature and Circumstances of the Offense is Nonviolent**

1.     The court is very familiar with the nature and circumstances of the offense of conviction. Ms. Smith never actually obtained a firearm. As the prosecution argued at trial, she was motivated to commit this offense by someone who had an intimate or familial relationship with her. That person also routinely beat her up – physically and emotionally. Of course, the attempted straw purchase of a firearm is a serious offense. However, the Court should not be "so appalled by the offense that it los[es] sight of the offender." *United States v. Olhovsky*, 562 F.3d 530, 549 (3d Cir. 2009). However, the history and characteristics of Ms. Smith's life favors some leniency.

### B. Additional punishment awaits Ms. Smith in state court

2. After Ms. Smith finishes this Court's sentence, she will be taken to state court where she will be sentenced on a probation violation.

3. While on bond, Ms. Smith has worked at Boston Market. *See* PSR ¶ 94. But that work was interrupted by concerns about her trial and the uncertainty attached to conviction and what exactly would happen thereafter. Before that, she worked at Dollar Tree from February – May 2017. *Id.* Further, Ms. Smith has complied with conditions of her pretrial release. The pretrial officer noted that "during unannounced home visits, the probation officer has been unable to make contact with Ms. Smith at the residence." While this may be true, a wrong conclusion or assumption was made that she must not have been living there. She was. Counsel has visited Ms. Smith at her home and she was there. There is no requirement that she be home at any particular time because she is not on home detention or curfew. She has reported to the Probation Office, court, and counsel's office has directed.

### C. Ms. Smith's rehabilitative needs are not served in prison.

4. The help Ms. Smith needs will not come for prison. A sentence to help her would be home incarceration. It will be sufficient punishment that won't cost the taxpayers money. She can also actually get help. As the prosecution posited, she is a woman who was taken advantage of by an abusive boyfriend. She needs counseling and job training. *See* Exhibits 4-5 (Course certificates).

### III.  BASES FOR VARIANCE

**A. Latoya Smith should be granted a variance because she has is a survivor of physical, sexual, and emotional violence.**

5. To talk to Latoya Smith and review her medical records is to enter a world marked by history of extensive and cruel abuse. The injuries described above and in the Presentence Report is a tip of the iceberg – incidents that she actually went to the hospital for. The father of her kids beat her almost daily and dominated every aspect of her life. When the injuries were bad, she would go to the hospital and give them rubbish excuses. Examples of her hospital visits in the last few years include the time she was beaten so badly that she ended up at the Emergency Room with black eyes:

   1. August 25, 2015: Trauma, 28-year-old woman with bilateral eye bruising and right eye pain status post assault 2 days ago. "There is a subtle minimally depressed fracture of the right frontal process of the maxilla." She reported to the hospital with "right facial pain below the right eye status post altercation 2 days ago in which she was struck with fists." "Police not involved and [Ms. Smith] does not want involved."

   2. February 5, 2016: Ms. Smith reports to emergency department. The story provided was that she "was running outside to catch her child who was running out of the yard and slipped and fell, striking her face on a wooden railing, which caused a laceration on the right upper lip." She suffered a laceration to right side of lip.

   3. March 30, 2016: Ms. Smith reports to the hospital with laceration to her forehead. The story provided was that while at the "grocery store and was carrying her baby, her other children began to misbehave, she went to correct them and ended up tripping and hitting her head on the door." She suffered a laceration to her forehead.

Exhibit 2 (Christiana Care medical records).

6.    A defendant's long history of abuse, particularly one as acute as Ms. Smith's, and surrounding the period of the offense is basis for variance.

    **B.    Latoya Smith should be granted a variance because of her diminished mental capacity, particularly because she has being hit repeatedly in the head and living with PTSD and traumatic brain injury.**

7.    Diminished capacity is basis for downward variance or departure. *See* U.S.S.G. § 5K2.13. Battered woman syndrome, a form of post-traumatic stress disorder, coupled with intellectual deficits and traumatic brain injury can cause diminished capacity. A symptom of this disorder is learned helplessness, which may prevent an abused woman from leaving her batterer. *See Johnson*, 956 F.2d at 899 (citing Leonore Walker, *The Battered Woman Syndrome* 33, 94 (1984)). This perceived inability to leave and a PTSD diagnosis is present in this case. *See* Exhibit 3 (reflecting PTSD diagnosis).

8.    Even as an "over aged student, . . . [Latoya Smith] had a cumulative grade point average of 1.0." PSR ¶ 86. In the past few years, as a result of being repeatedly hit in the head, she has suffered concussion(s). Medical records from April 2017, a few months before the offense of conviction, Dr. Grossing found:

> Ms. Smith has what best could be called a postconcussive syndrome from when she struck her head approximately a year ago chasing her son. In fact, the strike to the head was sufficient enough to cause a laceration requiring staples of the right temporal scalp beneath the hairline. She now has posttraumatic headaches with migrainous features, posttraumatic vertigo and occipital neuralgia, all referable to the concussion in the past.

Exhibit 1 (April 4, 2017 Letter from Dr. Grossinger). *See also* PSR ¶ 75.

9. Post-concussion syndrome, "is a specific set of neuropsychological (thinking, behavioral, and emotional) disorders caused by traumatic brain injury." http://www.headinjury.com/faqpcs.htm (Last accessed March 5, 2018). Additionally, Ms. Smith has a "flat affect" and "difficulty with recent memory." PSR ¶ 78. She has also been experiencing headaches, bifrontal and bioccipital and at the vertex of her head for almost two years now. *See* PSR ¶¶ 75-78.

10. The Supreme Court has made it clear that "impaired intellectual functioning is inherently mitigating." *Tennard v. Dretke*, 124 S.Ct. 2562, 2571 (2004). Ms. Smith suffered from significantly reduced mental and emotional capacity. *See United States v. Alemenas,* 553 F.3d 27 (1st Cir. 2009) (granting a downward variance of 43 months from an already reduced Guideline range, citing defendant's mental and emotional condition*); United States v. Apple*, 915 F.2d 899, 903 n.12 (4th Cir. 1990) (departure warranted where defendant was battered wife who suffered from chronic depression).

11. A court may take the defendant's mental condition into account in granting a departure or variance. *See United States v. Liu*, 267 F. Supp. 2d 371, 372 (E.D.N.Y. 2003) (departing downward based on defendant's diminished

7

capacity resulting from addiction to gambling); *United States v. Blake*, 89 F. Supp. 2d 328, 338-39 (E.D.N.Y. 2000) (departing downward due to defendant's mental impairments). In *United States v. Chambers*, 885 F. Supp. 12 (D.D.C. 1995), the court ddeparted from 130 months to 20 months where defendant was borderline mental defective with some brain damage, and convicted of storing drugs in her house.

12. In sentencing, courts take into account the defendant's mental illness, as a characteristic rendering them highly vulnerable during incarceration. *See United States v. Lawrence*, 254 F. Supp. 3d 441 (E.D.N.Y. 2017) ("The trial judge cannot close his or her eyes to the conditions a particular defendant being sentenced will necessarily experience in prison. . . . the prison environment must be considered by the sentencing judge in estimating total harm and benefits to prisoner and society—a utilitarian as well as a compassionate exercise."). Ms. Smith's intellectual and mental health issues makes her particularly vulnerable in prison because it is not a conducive environment for someone who suffers from ongoing concussion and history of abuse. She would be taken advantage off by cunning inmates.

    **C.**     **Latoya Smith should be granted a variance because she gained nothing from this offense.**

13. Money, greed, or addiction are typical reasons why people break the law. Ms. Smith gained nothing but grief, a conviction, and looking at being locked up in a faraway prison.

### D. Latoya Smith should be granted a variance because of her poor health.

14. In addition to the instances of been beaten up for years and living with a mild form of traumatic brain injury, on July 15, 2017, Ms. Smith was rushed to the hospital: "She had her vision and hearing going in and out today. Father states she's been having episodes of passing out." Exhibit 2. By October 2017, she experienced chest pains a lot, and while "brushing her daughter's hair," she felt lightheaded and "tunnel vision." PSR ¶ 69. She lost consciousness, passed out, and was twitching while on the floor. She was rushed to the hospital. *Id*.

## IV.  CONCLUSION

Because Latoya Smith is in poor physical health, a victim of domestic violence, entitled to departures on at least two bases, and her diminished capacity is basis for variance, a sentence not more than a year and a day, followed by two years of supervised release is sufficient for the purposes of punishment and deterrence.

Respectfully submitted,

/s/ Akin Adepoju
AKIN ADEPOJU, ESQUIRE
Assistant Federal Defender